UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DOUGLAS H. DAUPHINAIS, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:08-cv-1449 (VLB) |
| DONALD CUNNINGHAM et al. | : | |
| Defendants. | : | November 30, 2009 |

**MEMORANDUM OF DECISION AND ORDER GRANTING DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS [Doc. #78]**

The Plaintiff, Douglas H. Dauphinais, brought this action pro se for damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1961 et seq.), and pendant state law claims of bribery, slander, tortious interference with business relations, and violation of the Connecticut Corrupt Organization and Racketeering Activities Act ("CORA") (Conn. Gen. Stat. § 53-393 et seq.). The Defendants are his former employers, Donald and Gertrude Cunningham, and Somers Baptist Church, a local religious organization for which the Cunninghams have acted as deacon/deaconess or church officers.[1] Presently pending before the Court is the Defendants' motion to dismiss or, in the alternative, motion for judgment on the pleadings pursuant to Rules 12(b)(1), 12(b)(6), 12(h)(3) and 12(c) of the Federal Rules of Civil Procedure. For the reasons that follow, the Defendants' motion is GRANTED.

---

[1] **By Order dated June 2, 2009, this Court dismissed all claims against Defendants Cashman, Lattanzio, and Steele [Doc. #70].**

I. <u>Factual Background</u>

The following facts relevant to the Defendants' motion are taken from the Plaintiff's Complaint and the documents attached thereto.

The individual Defendants, Donald and Gertrude Cunningham, are husband and wife and owners of a company known as the Hanson Whitney Company ("Hanson Whitney" or "the Company"), which formerly employed the plaintiff in the 1990s. While employed by Hanson Whitney, the Plaintiff was a software developer who specialized in computer software for manufacturing companies. He claims to have developed certain software on his own time and on his own computer that was implemented by him at Hanson Whitney, resulting in a large increase in profits for the Company.

According to the Plaintiff, at some point he asked the Cunninghams to join him in the marketing of the software he had developed. However, they declined the offer and instead bullied and threatened the Plaintiff, calling him a "Damn Catholic" and threatening that he would receive "the worst of their (Baptist) three levels of punishment," among other statements. The Plaintiff quit his job at Hanson Whitney in May 1992 as a result of this treatment. Hanson Whitney continued to use the software developed by the Plaintiff for their business on an exclusive basis.

After quitting his job at Hanson Whitney, the Plaintiff experienced difficulties obtaining new employment. During October 1992, he applied for a Systems Analyst position with Windsor Manufacturing Systems ("Windsor"). After two interviews, he was informed by Robert Chapman, the company's Personnel

Manager, that he had a job pending a check of his references.  The Plaintiff provided Donald Cunningham as a reference.  He was hired by Windsor, and his employment there lasted from November through December 1992.  Subsequently, in March 1993, Chapman phoned the Plaintiff and informed him that Donald Cunningham was "blacklisting" him.

On June 30, 1993, the Plaintiff filed a blacklisting complaint with the Connecticut Department of Labor (hereinafter "CDOL").  See Attachment A.  In this complaint, the Plaintiff alleged that Donald Cunningham had given him a bad reference and as a result he had been unable to secure employment.  The CDOL Investigator handling the complaint interviewed Donald Cunningham on July 13, 1993.  Cunningham stated that he had received one reference call from Windsor since the Plaintiff left Hanson Whitney, and stated that he provided what he believed to be a fair and accurate assessment of the Plaintiff's job performance to Chapman.  Cunningham admitted telling Chapman that the Plaintiff had not performed well as a supervisor and that this led to a disagreement which was the basis for his employment terminating.  The investigator discussed restrictions on release of information set forth in Conn. Gen. Stat. § 31-128 with Cunningham, provided him with a copy of the statute, and issued orders for compliance which Cunningham signed.  Cunningham agreed in the future to only verify dates of employment, job title, and salary (if appropriate) unless he had written authorization to reveal additional information.  Thereafter, the investigator provided a report of his investigation to the Plaintiff and closed the file.

After receiving CDOL's report, the Plaintiff contacted the Hartford Legal

Referral Service and was referred to Attorney Phillip Steele. Steele met with the Plaintiff and accepted his case at a rate of $210 per hour along with a $1,000 retainer. At a subsequent meeting, Steele asked the Plaintiff what he thought of Donald Cunningham. On the basis of this question, the Plaintiff concluded that Steele had spoken to Donald Cunningham. During the same meeting, Steele convinced the Plaintiff to represent himself in his state court action in order to save money, and indicated that he would pick up the case at a later time when necessary. On October 5, 1994, the Plaintiff filed a complaint in Connecticut Superior Court alleging that Donald Cunningham and Catherine Campbell, Controller for Hanson Whitney, made defamatory statements against him in order to interfere with his business relationship with Windsor, and negligently inflicted emotional distress upon him by making harassing telephone calls. See Attachment C. However, Steele subsequently "walked off" the case, which the Plaintiff alleges is the result of his association with the Cunninghams. Thereafter, the Plaintiff dropped his case in Connecticut Superior Court. He alleges that he received numerous harassing telephone calls from both Steele and Donald Cunningham after Steele terminated his representation. Since that time, he has not been able to obtain an attorney to assist him in pursuing his claims, and has only been able to obtain sporadic employment. He does not claim that either of the Cunninghams spoke with anyone about him other than Chapman and the CDOL investigator.

    In June 2003, the Plaintiff wrote letters to the Attorney General and State Senator Colapietro in an attempt to redress the alleged blacklisting. Roger Rocheleau, Investigator for CDOL, responded to the Plaintiff via letter dated May

14, 2004.  See Attachment D.  In the letter, Rocheleau informed the Plaintiff that the statute of limitations on his blacklisting claim had expired.  Rocheleau further indicated that, notwithstanding expiration of the statute of limitations, he had investigated the Plaintiff's complaint and was unable to substantiate his allegations and therefore was not taking further action in the matter.  On October 12, 2004, the plaintiff attempted to contact Commissioner Shaun Cashman, but was instead referred to Attorney Stephen Lattanzio.  The following day, Cashman sent a letter to the Plaintiff stating that his blacklisting case was administratively closed with CDOL.  See Attachment E.  The Plaintiff subsequently sent letters to the Equal Employment Opportunity Commission and the FBI complaining of the Defendants' alleged activities, to no avail.  See Attachments F and G.

      The Plaintiff further alleges that, in July 2001, during a visit from his oldest daughter and son-in-law, his son-in-law told him that he had gone to a Baptist Church other than the Defendant Somers Baptist Church.  His son-in-law then searched the Plaintiff's computers in an attempt to locate software that the Plaintiff had developed.  Thereafter, his relationship with his two daughters became increasingly strained, and his daughters ultimately indicated that they could no longer have a relationship with him.  In 2006, the Plaintiff was allowed to visit his oldest daughter in Texas.  After viewing his daughter's home, he concluded that she and her husband had received a financial windfall, which he believed to have been the result of payoffs from the Baptist Church.  The record is devoid of any factual basis for this belief or any explanation of the hierarchy, organization, or structure of the Baptist denomination and its constituent churches.

Based upon the foregoing facts, the Plaintiff alleges that the Cunninghams engaged in a scheme of bribery, extortion, and other criminal activities in concert with the Baptist Church, Attorney Steele, and officials from CDOL to steal his computer software and blacklist him from finding employment over the past decade and a half.  He further alleges that, through their position at the Baptist Church, the Cunninghams made payoffs to his daughters so that they would no longer communicate with him.

## II.  Discussion

As an initial matter, the Court notes that the time for filing a motion to dismiss in this case has passed, as the Defendants filed an answer to the Complaint on March 6, 2009.  See Fed. R. Civ. P. 12(b).  Therefore, the Defendants' motion is properly treated as a motion for judgment on the pleadings, which may be filed after the pleadings are closed but early enough to avoid delaying trial.  See Fed. R. Civ. P. 12(c); see also Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).  "The standard for granting a Rule 12(c) motion is identical to that of a Rule 12(b)(6) motion for failure to state a claim."  Patel 259 F.3d at 126.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

6

enhancement.' To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (internal citations omitted).

In reviewing a pro se complaint, the Court must assume the truth of the allegations, and interpret the complaint liberally to "raise the strongest arguments it suggests." Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007). "A document filed *pro se* is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008) (quoting Erickson v. Pardus, 551 U.S. 89,94 (2007)). Nevertheless, "[l]ike any other complaint, a *pro se* complaint, to survive a motion to dismiss, must plead enough facts to state a claim to relief that is plausible on its face." Bisson v. Martin Luther King Jr. Health Clinic, No. 07-5416-cv, 2008 WL 4951045, at *1 (2d Cir. Nov. 20, 2008) (internal quotation marks omitted).

The Defendants move to dismiss the Plaintiff's RICO, slander, and tortious interference claims on statute of limitations grounds.

The statute of limitations for libel and slander is two years, see Conn. Gen. Stat. 52-597, and the statute of limitations for torts such as interference with business relations is three years. See Conn. Gen. Stat. 52-577. These statutes begin to run on the date of the act or omission complained of, rather than the date the cause of action has accrued or the injury has occurred. See Fichera v. Mine

7

Hill Corp., 541 A.2d 472, 475-76 (Conn. 1988); L. Cohen & Co., Inc. v. Dun & Bradstreet, Inc., 629 F. Supp. 1425, 1428-29 (D. Conn. 1986).

Based upon the facts alleged in the Complaint, the Plaintiff left Hanson Whitney in May 1992 after the Cunninghams allegedly made threatening statements to him, around which time he claims that the Company appropriated the software he had developed for their own use.  He first suffered injury with respect to his libel and tortious interference claims at the time he alleges Donald Cunningham provided a negative reference to Robert Chapman in October 1992.  According to the Plaintiff, he learned of this injury when Chapman phoned him in March 1993 and informed him that Cunningham was "blacklisting" him.  Therefore, the Plaintiff's own Complaint alleges that the injuries he suffered with respect to his slander and interference with business relations claims occurred no later than 1993, fifteen years before he filed suit in the instant case.

Nevertheless, the Plaintiff argues that the statute of limitations should be tolled due to the Defendants' fraudulent concealment.  Conn. Gen. Stat. § 52-595 provides for the tolling of the statute of limitations as a result of fraudulent concealment.  This provision states as follows:  "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence."  Id.  Thus, by its express terms, Conn. Gen. Stat. § 52-595 tolls the applicable statute of limitations only up to the point that the injured person first discovers his cause of action, and does not apply thereafter.  See Martinelli v.

Bridgeport Roman Catholic Diocesan Corp., 196 F.3d 409, 427 (2d Cir. 1999) ("[T]here plainly can be no effective tolling for a plaintiff who was aware of the existence of his or her cause of action from the time the claim originally accrued. We therefore conclude that the plaintiff must be ignorant of the facts that the defendant has sought to conceal for the statute of limitations to toll under § 52-595."). Here, the Plaintiff alleges in the Complaint that he has been aware of the essential facts underlying his slander and interference with business relations causes of action since no later than 1993. Moreover, on the basis of many of the same facts alleged in his present Complaint, the Plaintiff filed suit in Connecticut Superior Court on October 5, 1994 asserting claims for defamation, interference with business relations, and intentional infliction of emotional distress. See Attachment C. Therefore, these claims are time-barred and must be dismissed.

"The statute of limitations for a civil RICO claim is four years." McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 233 (2d Cir. 2008). "The statute begins to run when the plaintiff discovers - or should reasonably have discovered - the alleged injury." Id.

In support of his RICO claim, the Plaintiff alleges that the Cunninghams engaged in a scheme to extort and bribe state officials, his prior attorney, and his own family using their influence at the Baptist Church in order to appropriate his software and deprive him of employment opportunity. The majority of the allegations relating to the RICO claim relate to actions that occurred in the 1990s. It appears from the Complaint that the Plaintiff is asserting that he first discovered the alleged RICO scheme sometime in 1993 or 1994 when he concluded that the

9

Cunninghams had bribed Attorney Steele while he was representing the Plaintiff. Therefore, the RICO claim appears to be time-barred as well.

However, even assuming that the Plaintiff did not discover the alleged facts supporting his RICO claim until 2006, when he concluded that his family had been bribed by the Cunninghams, his claim must still be dismissed because the Complaint fails to allege a pattern of racketeering activity. Under 18 U.S.C. § 1962, "a person commits a RICO violation when he (a) invests income derived from a pattern of racketeering in an enterprise; or (b) controls an enterprise through a pattern of racketeering activity; or (c) participates in an enterprise through a pattern of racketeering activity; or (d) conspires to violate subsections (a), (b) or (c)." Dempsey v. Sanders, 132 F. Supp. 2d 222, 226 (S.D.N.Y. 2001). "As to what constitutes a pattern under RICO, the statute states only that it 'requires at least two acts of racketeering activity [i.e., predicate acts]' within a 10-year period." Id. (quoting 18 U.S.C. § 1961(5)). "The Supreme Court subsequently narrowed the definition to require a showing of at least two racketeering predicates (1) that are related and (2) that amount to, or threaten the likelihood of, continued criminal activity . . . As the Supreme Court explained: 'A pattern is not formed by sporadic activity, . . . and a person cannot be subjected to the sanctions of [RICO] simply for committing two widely separated and isolated criminal offenses . . . Instead, the term "pattern" itself requires the showing of a relationship between the predicates, . . . and of the threat of continuing activity . . . It is this factor of continuity plus relationship which combines to produce a pattern.'" Id. at 226-27 (quoting H.J. Inc. v. Northwester Bell Telephone Co., 492 U.S. 229, 239 (1989)).

As to the relatedness requirement, predicate acts are "related" for RICO purposes when they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Schlaifer v. Nance & Co., 119 F.3d 91, 97 (2d Cir. 1997). This requirement appears to be satisfied in this case, because the Plaintiff alleges that all of the acts of extortion and bribery committed by the Cunninghams were directed to the purpose of depriving the Plaintiff of the use of his software and employment opportunity and appropriating the software for their Company's exclusive benefit.

With respect to the continuity requirement, "a plaintiff in a RICO action must allege either an 'open-ended' pattern of racketeering activity (*i.e.,* past criminal conduct coupled with a threat of future criminal conduct) or a 'closed-ended' pattern of racketeering activity (*i.e.* past criminal conduct 'extending over a substantial period of time')." Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 97 (2d Cir. 1997). "Essentially, courts have held that where a Plaintiff alleges a single scheme promulgated for the limited purpose of defrauding a single victim, continuity cannot be established." Dempsey, 132 F. Supp. 2d at 228 (citations omitted). In this case, the Plaintiff's RICO allegations consist of 1) quotations from various criminal statutes that may serve as predicate acts for purposes of RICO with the names of the Defendants inserted therein, and 2) general statements reflecting the Plaintiff's belief that the Cunninghams bribed and extorted his former attorney, state officials, and members of his family, without any specific supporting facts. These are precisely the types of allegations that are insufficient to survive a

11

motion to dismiss under the standard set forth by the Supreme Court in Iqbal, 129 S. Ct. 1949 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement . . ."). However, even construing the Plaintiff's Complaint as liberally as possible and giving him the benefit of every doubt, his RICO claim still must fail because the "scheme" he alleges "is nothing more than a classic example of a single-victim, single-defendant fraud dressed up to resemble a multi-faceted RICO claim. It is simply not the type of activity constituting the 'long-term criminal conduct' which Congress intended to target with the passage of RICO." Dempsey, 132 F. Supp. 2d at 228-29. Accordingly, the Plaintiff's RICO claim is dismissed.

Finally, the Defendants move to dismiss the Plaintiff's CORA claim on the basis that CORA does not permit a civil cause of action. CORA is purely a criminal statute and does not authorize a private right of action. See Town of West Hartford v. Dadi, Docket No. CV010807735, 2002 WL 241462 (Conn. Super. Ct. Feb. 1, 2002); see also Cort v. Ash, 422 U.S. 66, 80 (1975) (finding that no private cause of action existed under "a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone"); Burke v. APT Foundation, 509 F. Supp. 2d 169, 173 (D. Conn. 2007) ("criminal statutes . . . do not provide a private right of action to civil litigants"). Therefore, the Plaintiff's CORA claim is dismissed as well.[2]

---

[2] The Plaintiff also included a claim for "bribery" in his Complaint. However, he failed to identify any Connecticut statute or case law authorizing a civil cause of

### III. Conclusion

Based upon the foregoing reasoning, the Defendants' motion for judgment on the pleadings is GRANTED. The Clerk is directed to enter judgment for the Defendants and to close this case.

IT IS SO ORDERED.

/s/
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: November 30, 2009.

---

action for bribery, and instead appears to allege instances of bribery as predicate acts for purposes of his RICO claim. To the extent that the Plaintiff seeks to establish civil liability for violation of a criminal bribery statute, such as Conn. Gen. Stat. § 53a-160, which makes commercial bribery a class D felony, his claim would be barred for the reasons explained in Cort and Burke.